# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| OLLIE M. HOLLMAN, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) No. 4:07-CV-1114 CAS ) |
| TEAMSTER LOCAL 682, | ) ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Pending before the Court is defendant Teamster Local 682's ("Local 682" or "the Union") motion for summary judgment. Plaintiff opposes the motion. The motion having been fully briefed is ripe for review. For the following reasons, the Court will grant defendant's motion for summary judgment and dismiss plaintiff's claims against it.

*Background*

Plaintiff filed a pro se "Employment Discrimination Complaint" against Local 682 using a form complaint provided by the Clerk's Office. In her complaint, plaintiff did not specify under which law or statutes she brings her claims, but rather she checked the box "other" and wrote:

"Retaliation for engaging in protected activity.

Denied arbitration on my grievance due to restrained coercion.

Discriminated against on the basis of my sex."

Plaintiff's Complaint at 2. Plaintiff checked "retaliation" and "terms of my employment differ from those of similar employees," as the conduct upon which her suit is based. Plaintiff also wrote that Local 682 "failed to arbitrate union grievance based on sex (female) and in retaliation for engaging

in protected activity, in restrained coercion with employer Tee & E Trucking (Thomas Nellums)." Id. at 4. In the area of the form designated for a description of her action, plaintiff sets out the following allegations:

> Teamster Local 682 knew employer Tee & E Trucking (Thomas Nellums) was not paying into insurance for two female workers or benefits. Accepted our union dues money and when grievance was filed, refused to arbitrate my complaint. Restrained coercion to further limit me from working on behave (sic) of Tee & E Trucking and Millstone Bangert.

Id. at 5. In her complaint, plaintiff did not specify what damages or other relief she is seeking.

Defendant moves for summary judgment on the grounds that plaintiff is collaterally estopped from claiming it breached its duty of fair representation in regard to her termination, because she received an adverse ruling in a discrimination case against her employer. Local 682 also argues, collateral estoppel not withstanding, that plaintiff cannot prove the necessary elements to establish prima facie cases of breach of duty of fair representation, gender discrimination, or retaliation; and that plaintiff failed to exhaust her administrative remedies in regard to her claim of race discrimination.

***Summary Judgment Standard***

The standards applicable to summary judgment motions are well-settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. City of Mt. Pleasant, Ia. v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor).

Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence he or she must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Herring v. Canada Life Assur. Co., 207 F.3d 1026, 1029 (8th Cir. 2000). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Herring, 207 F.3d at 1029 (quoting Anderson, 477 U.S. at 248). A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact. See Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1114 (8th Cir. 2004). "Self-serving, conclusory statements without support are not sufficient to defeat summary judgment." Armour and Co., Inc. v. Inver Grove Heights, 2 F.3d 276, 279 (8th Cir. 1993).

In passing on a motion for summary judgment, it is not the court's role to decide the merits. The court should not weigh evidence or attempt to determine the truth of a matter. Rather, the court must simply determine whether a genuine issue of material fact exists. Bassett v. City of Minneapolis, 211 F.3d 1097, 1107 (8th Cir. 2000).

The Eighth Circuit has stated that summary judgment should seldom be used in cases alleging employment discrimination. Kells v. Sinclair Buick - GMC Truck, Inc., 210 F.3d 827, 830 (8th Cir.

3

2000). Summary judgment is not appropriate in employment discrimination cases unless all the evidence points one way and is susceptible of no reasonable inference of discrimination. Breeding, 164 F.3d 1151, 1156 (8th Cir. 1999) (citation and internal quotation omitted). Summary judgment is appropriate, however, if the plaintiff has failed to present evidence sufficient to create a jury question as to an essential element of his claim. Whitley v. Peer Review Sys., Inc., 221 F.3d 1053, 1055 (8th Cir. 2000) (citing Chock v. Northwest Airlines, Inc., 113 F.3d 861, 865 (8th Cir. 1997)).

*Facts*

Local Rule 4.01(E) provides, with respect to summary judgment motions:

> A memorandum in support of a motion for summary judgment shall have attached a statement of uncontroverted material facts, set forth in a separately numbered paragraph for each fact, indicating whether each fact is established by the record, and, if so, the appropriate citations. Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine dispute exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts. All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.

E.D. Mo. L.R. 4.01(E).

In support of its motion for summary judgment, defendant submitted a Statement of Uncontroverted Material Facts listing twenty-eight (28) uncontroverted facts with citations to the record. Plaintiff, however, did not file a statement of material facts as to which she contends a genuine issue exists, and she failed to identify the paragraph numbers from defendant's statement of uncontroverted facts for any facts that she contends are in dispute.[1] Instead, as her response, plaintiff

---

[1] Plaintiff initially filed her suit pro se. Attorney David L. Pentland, Sr., entered an appearance for Ms. Hollman on February 27, 2009, and filed her response to defendant's motion for summary judgment. The only exhibits attached to her response are her complaint and a signed union withdrawal card.

4

listed nine (9) general allegations for which she claims there exist material issues of fact and law. She made no specific references to portions of the record upon which these are based. Plaintiff's response is insufficient to meet the requirements of Local Rule 4.01(E), and she is deemed to have admitted all facts in defendant's statement of uncontroverted facts. Deichmann v. Boeing Co., 36 F. Supp.2d 1166, 1168 (E.D. Mo. 1999), aff'd, 232 F.3d 907 (8th Cir. 2000) (per curiam), cert. denied, 531 U.S. 877. Cf. Northwest Bank & Trust Co. v. First Ill. Nat'l Bank, 354 F.3d 721, 725 (8th Cir. 2003) (holding that the district court did not abuse its discretion by applying local rules that excluded some of the material facts offered in opposition to a motion for summary judgment).

That said, the Court accepts the following material facts as true for purposes of summary judgment:

Plaintiff was an employee of Tee & E Trucking, Inc. ("Tee & E") and a member of the bargaining unit represented by Local 682. The collective bargaining agreement ("CBA") between Tee & E and Local 682 proscribes specific procedures for resolving disputes between an employee and the company. When a difference or disagreement arises over the CBA, after first presenting the problem to an immediate supervisor, the employee and/or union are to file a written grievance to be received by Tee & E no later than five (5) days from the date of the incident at issue. Within fifteen (15) days of filing a grievance, a grievance meeting is to be held among the employee, Tee & E, and the Union. "If the Company's response at the [ ] grievance meeting is not satisfactory to the Union, or if a [grievance ] meeting is not held, the Union, within ten (10) days following the [grievance]

---

In her response, plaintiff also asks that she be allowed to "re-daft" her complaint and for time to pursue administrative remedies. The deadline to amend the pleadings has long expired, and there is nothing to suggest that plaintiff can remedy the deficiencies in her complaint through amendment. As for the exhaustion of administrative remedies, plaintiff is time-barred under the terms of the collective bargaining agreement and the provisions of Title VII.

meeting (or withing 10 days from the latest date the [grievance] meeting could be held), must notify the Company in writing that it wishes to proceed to arbitration." Ex. A, attached to Todd Suttles's Aff. at 6. The CBA also provides specific procedures for proceeding in arbitration.

Plaintiff was terminated from her employment with Tee & E on March 15, 2006. The next day, Local 682 received a grievance complaint form from plaintiff in which she stated she believed her discharge was unjust and in violation of the seniority provisions of the CBA. The Union assisted plaintiff in filing her grievance, and that same day, Todd Suttles, Business Representative for Local 682, sent Tee & E a letter asking for a grievance meeting pursuant to the CBA.

A grievance meeting was scheduled for March 23, 2006. The owner of Tee & E, Tom Nellums, the shop steward, Ken Dixon, and Mr. Suttles were present for the meeting. Plaintiff neither appeared for the meeting nor telephoned that she would not attend. The grievance meeting was rescheduled and held on April 12, 2006. At the April 12 meeting, Mr. Nellums produced two letters from Tee & E customers, in which the customers stated they did not want plaintiff working on their projects and job sites due to her poor performance and uncooperative attitude. Mr. Nellums also stated that other customers had made similar complaints regarding plaintiff's poor performance and uncooperative attitude, and that he had previously given plaintiff a verbal warning regarding her insubordination.

Following notice that plaintiff wished to file a grievance regarding her termination, and up through April 21, 2006, Mr. Suttles investigated the circumstances of plaintiff's discharge by speaking with plaintiff, her co-worker, and Mr. Nellums, and by reviewing written complaints. Mr. Suttles also spoke with the Union's labor attorney regarding the circumstances of plaintiff's discharge. Based on the facts uncovered in the investigation and upon the advice of legal counsel, Mr. Suttles did not

6

believe the Union could prevail in arbitration. Mr. Suttles sent plaintiff a letter on April 21, 2006, in which he stated the Union would not pursue arbitration of the grievance regarding her termination.

In May 2006, plaintiff filed a charge of discrimination against Local 682 with the Equal Employment Opportunity Commission ("EEOC") alleging the Union discriminated against her based on her gender. Plaintiff's EEOC complaint was transferred to the Missouri Commission on Human Rights ("MCHR"), which has a work sharing agreement with the EEOC. In June 2006, plaintiff filed additional charges against Tee & E and Local 682 alleging discrimination following the termination of her employment. On February 7, 2007, the MCHR issued a no-cause finding as to Local 682.

Plaintiff filed her pro se complaint against Local 682 on June 8, 2007. Prior to filing this complaint, plaintiff also filed an employment discrimination suit in this District against Tee & E and Mr. Nellums, which was captioned Hollman v. Nellums, et al., 4:07-CV-809 HEA, and assigned to the Honorable Henry E. Autrey. In this suit, plaintiff raised claims of gender discrimination and retaliation. She did not allege Tee & E had failed to provide her insurance benefits on account of her gender.

On November 12, 2008, Judge Autrey granted these two defendants' motion for summary judgment. In his Memorandum and Order, Judge Autrey found there was no supervisor liability under Title VII as to Mr. Nellums, and that plaintiff had failed to state a claim of gender discrimination against Tee & E, because she had not filed a charge of gender discrimination against the company with the EEOC or MCHR. As for her claim of retaliation, Judge Autrey found plaintiff had failed to identify any protected activity covered under Title VII in which she had engaged, and that there was no evidence which established Tee & E's articulated reasons for her termination were pretextual. "[T]he admissible evidence establishes [Tee & E] terminated Plaintiff's employment based

on a legitimate business decision, i.e., continued employment of Plaintiff could result in loss of business because of Plaintiff's inability to interact with Defendant's customers." Hollman v. Nellums, 2008 WL 4890572, at *7 (E.D. Mo. Nov. 12, 2008).

*Discussion*

As an initial matter, defendant argues plaintiff's case should be dismissed on the basis of collateral estoppel because, according to the Union, she has alleged identical facts in this suit as she alleged against her employer in Hollman v. Nellums. The Court does not agree with defendant's characterization. In Hollman v. Nellums, plaintiff alleged Tee & E terminated her employment on the basis of her gender, and that they retaliated against her by not forwarding her employment records to a prospective new employer because she had complained about not receiving the prevailing wage and had filed a union grievance. In the present suit, plaintiff has alleged Local 682 did not pursue arbitration regarding her discharge or pursue a grievance regarding Tee & E's nonpayment of insurance benefits because she was a woman. Here, the alleged unlawful and discriminatory misconduct is that of the Union. Therefore, Judge Autrey's finding that Tee & E did not retaliate against plaintiff in terminating her employment is not controlling as to Local 682's alleged misconduct in this suit. At most, it supports the Union's argument that it was reasonable not to pursue arbitration as to the termination of plaintiff's employment because there was a legitimate non-discriminatory reason for her discharge. In short, collateral estoppel does not warrant complete dismissal in this case because the issues before the Court in the above-captioned case are not the same as those that were before Judge Autrey in Hollman v. Nellums.

## I.     BREACH OF DUTY OF FAIR REPRESENTATION

In her complaint, plaintiff alleges that Local 682 failed to arbitrate the denial of her grievance regarding the termination of her employment, and it refused to pursue a grievance regarding Tee & E's failure to pay for her insurance benefits. Construing the pro se complaint liberally, the Court believes plaintiff is attempting to raise claims for breach of the duty of fair representation.

As the exclusive bargaining agent in the negotiation and administration of a CBA, a union "'enjoys broad authority ... in the negotiation and administration of [the] collective bargaining contract.'" 14 Penn Plaza LLC v. Pyett, 129 S.Ct. 1456, 1463 (2009) (quoting Communications Workers v. Beck, 487 U.S. 735, 739 (1988)). The union's authority, however, "is accompanied by a responsibility of equal scope, the responsibility and duty of fair representation." Id. (quoting Humphrey v. Moore, 375 U.S. 335, 342 (1964)). See also Jones v. United Parcel Serv., Inc., 461 F.3d 982, 994 (8th Cir. 2006). Section 301 of the Labor Management Relations Act permits an action against the Union for breach of this duty.

To establish a breach of duty of fair representation, a plaintiff must show that the union's conduct was "arbitrary, discriminatory, or in bad faith." Marquez v. Screen Actors, 525 U.S. 33, 44 (1998). See also Hansen v. Qwest Commc'ns, --- F.3d ----, 2009 WL 1212801, at *3 (8th Cir. May 6, 2009); Smith v. United Parcel Serv., Inc., 96 F.3d 1066, 1068 (8th Cir. 1996). "Mere negligence, poor judgment, or ineptitude on the part of the union is insufficient to establish a breach of the duty of fair representation." Stevens v. Highway, City, & Air Freight Drivers Local Union No. 600, 794 F.2d 376, 378 (8th Cir. 1986) (citations omitted). A union's conduct is arbitrary if, when all the circumstances existing at the time of the union's action or inaction are considered, the union's actions are "so far outside a wide range of reasonableness as to be irrational." Beavers v. United

9

Paperworkers Int'l Union, Local 1741, 72 F.3d 97, 100 (8th Cir. 1995) (citations and internal quotations omitted). A union also breaches its duty of fair representation if it illegally discriminates against one of its member. See 14 Penn Plaza, 129 S.Ct. at 1473 (finding breach of duty of fair representation prohibited illegal discrimination against older workers); Vaca v. Sipes, 386 U.S. 171, 177 (1967) (describing the duty of fair representation as the "statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.") (emphasis added).

Therefore, in order to avoid summary judgment, plaintiff must either (i) present evidence that a material issue of fact exists as to whether Local 682's action or inaction was outside the "wide range of reasonableness" under the circumstances, see Beavers, 72 F.3d at 100; or (ii) present "enough evidence of discrimination [or bad faith] by the union to create a genuine issue of material fact." Schmidt v. International Broth. of Elec. Workers, Local 949, 980 F.2d 1167, 1170 (8th Cir. 1992) (quoting Carter v. United Food & Commercial Workers, Local No. 789, 963 F.2d 1078, 1082 (8th Cir. 1992)).

### A. Failure to Arbitrate

"The duty of fair representation may be violated when a union in bad faith or with dishonest purpose interferes with a right conferred on an employee by his employer, fails to take a grievance to arbitration . . . ." Emmanuel v. Omaha Carpenters Dist. Council, 535 F.2d 420, 423 (8th Cir. 1976) (internal quotations omitted). But the simple act of not pursuing arbitration does not amount to bad faith. See Danylchuk v. Des Moines Register & Tribune Co., 128 F.3d 653, 654 (8th Cir. 1997) (reasoning the union's actions were not "arbitrary, discriminatory, or taken in bad faith" when, as part of overall negotiations for a new collective bargaining agreement, "the union dropped efforts

to submit [the grievant's] case to binding arbitration, and consented to refer it instead to non-binding mediation"). It is the Union, not the individual employee, who decides whether to submit a grievance to arbitration and it is afforded some discretion. See Vaca v. Sipes, 386 U.S. 171, 192 (1967) (reasoning unions have the "contractual power honestly and in good faith to settle grievances short of arbitration," and "[i]f the individual employee could compel arbitration of his grievance regardless of its merit, the settlement machinery provided by the contract would be substantially undermined.")

Upon consideration of the undisputed evidence, the Court finds the Union's actions in this case were neither arbitrary nor in bad faith. Local 682 did pursue a grievance regarding plaintiff's discharge, and it particpated in the grievance procedures in good faith. The Union, however, declined to pursue arbitration after it investigated the circumstances of plaintiff's discharge and consulted with its labor attorney, and it determined plaintiff's claim was without merit. The Union declined to pursue arbitration because it believed plaintiff would not prevail in arbitration. The Union did not breach its duty of fair representation by investigating the grievance and deciding not to pursue it in arbitration due to lack of credible evidence in plaintiff's favor. See Cross v. United Auto Workers, Local 1762, 450 F.3d 844, 847 (8th Cir. 2006); Martin v. Am. Airlines, Inc., 390 F.3d 601, 607 (8th Cir. 2004); Washington v. Serv. Employees Int'l Union, Local 50, 130 F.3d 825, 827 (8th Cir. 1997); Smith v. McDonnell Douglas Corp., 107 F.3d 605, 607 (8th Cir. 1997).

### B. Failure to Pursue a Grievance

As to Local 682's failure to pursue a grievance in regarding Tee & E's nonpayment of plaintiff's insurance benefits, the fact that the Union did not pursue a grievance does not constitute bad faith or arbitrary conduct in and of itself. Unions possess substantial discretion in deciding which grievances to pursue. Carnes v. United Parcel Serv., Inc., 51 F.3d 112, 116 (8th Cir. 1995) (citing

11

Minnis v. International Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW, 531 F.2d 850, 854 (8th Cir. 1975)). The Eighth Circuit has stated:

> A union does not act arbitrarily simply because it does not pursue a grievance that it has decided lacks merit. Indeed, because the union's duty of fair representation is a collective duty, owed equally to all members of the bargaining unit, courts have ruled that the union has the affirmative duty not to press grievances which the union believes, in good faith, do not warrant such action.

Sanders v. Youthcraft Coats & Suits, Inc., 700 F.2d 1226, 1229 (8th Cir. 1983) (citations omitted).

In her complaint, plaintiff alleges Local 682 knew Tee & E was not paying for insurance benefits, but it failed to pursue a grievance on her behalf. Plaintiff admitted in her deposition, however, that she never went to the Union and asked that a grievance be filed. Plaintiff's Dep. at 34. Plaintiff testified that she mentioned to Mr. Suttles that Tee & E was not paying her insurance benefits, but she did not request that he or the Union file a grievance. Id. at 33-34. Furthermore, plaintiff did not exhaust the internal grievance procedures that were available to her. Under the CBA, either an employee or the Union may file a grievance against the company. There is nothing in the record to suggest plaintiff was precluded from filing a grievance against Tee & E based in its failure to provide her with insurance benefits. In fact, there is evidence in the record that she was familiar with the required grievance procedures and not hesitant to take advantage of them, as she completed the grievance form regarding the termination of her employment. In light of these facts, the Court finds Local 682 did not act arbitrarily or in bad faith in not pursuing a grievance regarding the nonpayment of plaintiff's insurance benefits. Carter v. Ford Motor Co., 121 F.3d 1146, 1149 (8th Cir. 1997) (finding no breach of duty of fair representation on part of union where plaintiff had right to appeal denial of grievance on his own, and did not).

For all these reasons, plaintiff's claims of breach of duty of fair representation are without merit and will be dismissed.

## II. RACE AND GENDER DISCRIMINATION

Although plaintiff did not check the Title VII box on her form complaint, she did allege Local 682 discriminated against her on the basis of her race and gender. Construing the pro se complaint liberally, the Court will analyze her claims under Title VII.

In 42 U.S.C. § 2000e-2(c), Congress made it unlawful for labor organizations

> (1) to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin;
>
> (2) to limit, segregate, or classify its membership or applicants for membership, or to classify or fail or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment, because of such individual's race, color, religion, sex, or national origin; or
>
> (3) to cause or attempt to cause an employer to discriminate against an individual in violation of this section.

According to the Eight Circuit, a union can be liable under Title VII: (1) if "it causes or attempts to cause the employer to discriminate," (2) if it "purposefully acts or refuses to act in a manner which prevents or obstructs a reasonable accommodation by the employer," or (3) if it " 'pursue[s] a policy of rejecting disparate-treatment grievances' meant to vindicate employee rights protected by Title VII." Thorn v. Amalgamated Transit Union, 305 F.3d 826, 832 (8th Cir. 2002).

### A. Gender Discrimination

In regard to her claim of gender discrimination, plaintiff has alleged that she was discriminated against on the basis of her sex, because the Union declined to pursue in arbitration the grievance regarding the termination of her employment. As stated above, however, the Union had a legitimate non-discriminatory reason for not pursuing the grievance to arbitration – it believed the grievance was without merit. Plaintiff has not shown (or even alleged) that she was treated differently than similarly situated male members. The Union produced evidence where on at least two occasions it declined to pursue arbitration on behalf of two of its male members.

As for any allegations that Local 682 failed to pursue a grievance regarding Tee & E's failure to pay for plaintiff's insurance benefits, there is no evidence the Union declined to pursue the grievance on account of plaintiff's gender. As stated above, plaintiff did not request that the Union file a grievance on her behalf. Furthermore, there is nothing to suggest that she could not have filed the grievance herself. For whatever reason, plaintiff chose not to. In addition, there are no allegations that plaintiff was damaged by the Union's failure to pursue a grievance regarding Tee & E's nonpayment of her insurance benefits.

### B. Race Discrimination

On her form complaint, plaintiff checked the box alleging that Local 682 discriminated against her on the basis of her race. Setting aside the fact that plaintiff has made no substantive allegations regarding racial discrimination, plaintiff's claim fails because she had fail to exhaust her administrative remedies regarding any claim of race discrimination.

Title VII requires administrative exhaustion before filing a lawsuit. Edelman v. Lynchburg College, 535 U.S. 106, 108-09 (2002). To exhaust one's administrative remedies, an individual must

timely file a charge of discrimination with the EEOC or a state enforcement agency setting forth the facts and nature of the charge. 42 U.S.C. § 2000e-5(e). The charge must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b). The charge limits the scope of the subsequent civil action in that once an individual has received a right to sue notice from the EEOC or state agency, he or she has 90 days in which to file a lawsuit that "grows out of or is like or reasonably related to the substance of the allegations in the administrative charge." Nichols v. Am. Nat'l Ins. Co., 154 F.3d 875, 886 (8th Cir. 1998). See also Mohr v. Dustrol, Inc., 306 F.3d 636, 644-45 (8th Cir. 2002). In general, if the employee did not raise the conduct in the administrative charge, or she may not challenge it in court. 42 U.S.C. § 2000e-5(f)(1); Cottrill v. MFA, Inc., 443 F.3d. 629, 634-35 (8th Cir. 2006).

Plaintiff filed a charge of discrimination with the EEOC against Local 682 in May 2006. As defendant points out, however, plaintiff's EEOC charge does not contain any reference to race discrimination. Because plaintiff failed to raise race discrimination with the EEOC or a state enforcement agency, the Court finds plaintiff has failed to exhaust her administrative remedies with respect to this claim, and the claim will be dismissed. Cottrill, 443 F.3d. at 634-35 (claims for disparate treatment did not arise from nor were reasonably related to the allegations of a hostile work environment); Shannon v. Ford Motor Co., 72 F.3d 678, 684 (8th Cir. 1996) (finding a plaintiff may only bring claims in federal court that are "like or reasonably related" to the claims brought in the EEOC charge); Tart v. Hill Behan Lumber Co., 31 F.3d. 668, 671 (8th Cir. 1984) (claim of racial harassment is not reasonably related to racially discriminatory discharge).

## III. RETALIATION

Title VII prohibits an employer or labor organization from retaliating against an employee who has opposed any practice Title VII makes unlawful, or who has "made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation. 42 U.S.C. § 2000e-3(a); 42 U.S.C. § 2000e-3(a); Barker v. Missouri Dept. of Corrs., 513 F.3d 831, 834 (8th Cir. 2008). A prima facie case of retaliation requires a plaintiff to prove "(1) he [or she] engaged in protected conduct, (2) a reasonable employee would have found the challenged retaliatory action materially adverse, and (3) the materially adverse action was causally linked to the protected conduct." Carpenter v. Con-Way Cent. Express, Inc., 481 F.3d 611, 618 (8th Cir. 2007) (citing Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006)). To establish a retaliation claim, a plaintiff must show that the defendant had actual or constructive knowledge of the protected activity, Buettner v. Arch Coal Sales Co., Inc., 216 F.3d 707, 715 (8th Cir.2000), and "that the protected conduct was a determinative – not merely motivating – factor in the employer's adverse employment decision." Van Horn v. Best Buy Stores, L.P., 526 U.S. F.3d 1144, 1148 (8th Cir. 2008) (internal citation omitted).

Plaintiff fails to identify any protected activity in which she has engaged other than to file charges with the EEOC and MCHR. These charges, however, were filed after the Union declined to pursue arbitration regarding her discharge and after it failed to pursue a grievance regarding her insurance benefits. Therefore, there can be no causal ink between plaintiff's protected activity and the Union's allegedly adverse actions. As such, plaintiff fails to establish a prima facie case of retaliation against Local 682

*Conclusion*

For all the above-stated reasons, plaintiff has failed to establish claims of breach of duty of fair representation, gender and race discrimination, and retaliation against Local 682, and the Court will enter judgment in the Union's favor.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Teamster Local 682's motion for summary judgment is **GRANTED**. [Doc. 47]

**IT IS FURTHER ORDERED** that plaintiff Ollie M. Hollman's complaint against Teamster Local 682 is **dismissed.**

A separate judgement shall accompany this Memorandum and Order.

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this __15th__ day of May, 2009.